# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **FAYEZ K. SHAMIEH, M.D., ET AL** | **:** | **DOCKET NO. 06 CV 242** |
| | | |
| **VS.** | **:** | **JUDGE TRIMBLE** |
| | | |
| **AMERICAN INTERSTATE** | **:** | **MAGISTRATE JUDGE HILL** |
| **INSURANCE COMPANY, ET AL** | | |

## REPORT AND RECOMMENDATION

Pending before the undersigned for Report and Recommendation is the plaintiffs' Motion to Remand this suit to the 14th Judicial District Court.  [rec. doc.6].   Memoranda in support of, and in opposition to, the Motion have been filed, limited discovery has been conducted and oral arguments have been heard.[1]  For the following reasons, it is recommended that the Motion to Remand be **GRANTED** and accordingly, that this lawsuit be remanded to state court.

## BACKGROUND

The following chronology of events is pertinent to resolution of the instant Motion to Remand.

On June 16, 2004, a judge of the Louisiana Office of Workers' Compensation ("OWC") issued Reasons for Judgment in favor of Beutler-England Clinic (the "Clinic") against Cambridge Integrated Services ("Cambridge") holding that a 20% reduction of

---

[1]A transcript of the oral argument has been filed of record herein.

the payment of fees charged by the Clinic pursuant to a Preferred Provider Organization (PPO) contract, which resulted in payments to the Clinic below that set by the Louisiana Workers' Compensation Fee Schedule[2] ("Fee Schedule") and the actual charges of the Clinic, violated the Louisiana Workers' Compensation Laws, and that therefore the provisions in the PPO agreement that allowed the discount were unenforceable. *Ramona Primeaux v. K-Mart Corporation/Cambridge Integrated Services*, OWC No. 03-01254 (6-16-04).[3] The appeal of that case was dismissed by the defendant prior to oral argument before the Louisiana Third Circuit Court of Appeal. Accordingly, the Judgement against Cambridge became final. [Tr. p. 42, 23].

On April 6, 2005, Dr. Shamieh filed suit in the 14th Judicial District Court against American Interstate Insurance Company seeking to collect allegedly underpaid medical fees for services rendered to Glenn Martin, for statutory penalties and attorney fees.[4] The suit alleged that the defendant paid fees less than those set out in the Fee Schedule pursuant to a Preferred Provider Network discount. This suit is referred to herein as the *Shamieh* suit.

On April 11, 2005, Judge Trimble remanded a case similar to the instant lawsuit to state court. *Gunderson v. F.A.Richard & Associates, et al.*, 04-1242 (W.D.La. 2005). In

---

[2]La.R.S. 23:1034.2 requires that the Director of the Louisiana Office of Workers' Compensation establish and promulgate a reimbursement schedule for drugs, supplies, hospital care and service, and medical and surgical treatment which is due under the Louisiana Workers' Compensation Act.

[3]A copy of the decision was attached as Exhibit C to the Motion to Remand.

[4]The original petition was amended on December 30, 2005, but no additional parties were added.

remanding that case, Judge Trimble rejected the defendants' argument that non-diverse

defendants had been "fraudulently misjoined" to defeat diversity jurisdiction. Judge

Trimble held that the relationships between the defendant PPO and third-party

administrators were so intertwined that it could not be said that the joinder was improper,

and that even if the defendants had been improperly joined, the misjoinder was not

egregious and hence, was not fraudulent.

On December 30, 2005, a three judge panel of the Louisiana Third Circuit Court of

Appeal issued its decision in *Beutler-England Clinic v. Market Basket No.27*, 919 So.2d

816, 2005-952 (La.App. 3rd Cir. 2005). In that case, the Third Circuit held that the OWC

did not have jurisdiction to consider claims by health care providers against employers,

insurers and their third-party administrators for the collection of fees reduced pursuant to

PPO agreements. Rather, the court held that the determination as to whether a contract

whereby the health care provider receives less than the fee set forth in the Fee Schedule

for services rendered to a Louisiana workers' compensation patient can "coexist" with the

Louisiana Workers' Compensation  scheme had to be determined by the district court, not

the OWC. *Id*. at 820.

On January 11, 2006, the *Shamieh* suit was amended to add new Louisiana health

care provider plaintiffs, and approximately 124 additional insurer, self-insurer and third-

party administrator defendants.[5] [rec. doc. 5]. Of these additional defendants, at least four

are Louisiana citizens: American Interstate Insurance Company ("American"), F.A.

Richard & Associates, Inc. ("Richard"), Lemic Insurance Company ("Lemic"), and

Louisiana Safety Association of Timberman - Self Insurance Fund ("LSAT").[6] It is

undisputed that at least two of the additional defendants, Great West Casualty Company

("Great West"), a foreign insurer doing business in Louisiana, and Huey T. Littleton

Claims Service, Inc. ("Littleton"), an alleged Louisiana corporation, did not consent to

removal of the *Shamieh* action to this court. *See Id.* at ¶ 1.63, 1.73; rec. doc. 183, ¶ 1; rec.

doc. 10.

In amending the petition, the plaintiff deleted the allegations in the original

petition, and, in effect, re-pled the suit as one seeking a declaratory judgement. See rec.

doc. 5, ¶ 2. In the Amended Petition, plaintiffs allege that they have rendered medical

services to Louisiana workers' compensation patients, for which they have billed one or

more of the named defendants, who are legally responsible for payment of those bills.

---

[5]None of the defendants are Preferred Provider Organizations. One defendant, Rehab Review, Inc. ("Rehab"), asserts that it is a Medical Necessity Review Organization licensed by the Louisiana Commissioner of Insurance. See rec. doc. 112.

[6]Taking the allegations in plaintiffs' amended petition as true, at the time of removal a total of twenty-six defendants were Louisiana citizens: American, Al Copeland Investments, Inc., Amerisafe Risk Services, Inc., Compsolutions, Cost Containment Services, Employers' Self Insurers Fund, FARA, Gray & Company, Inc., the Gray Insurance Company, Hospital Services of Louisiana, Inc., Littleton, Lemic, Louisiana Automobile Dealers Association Self Insurers' Fund, Louisiana Commerce & Trade Association Self Insurers Fund, Louisiana Health Care Self Insurance Fund, LSAT, Louisiana Restaurant Association Self Insurers Fund, Louisiana Retailers Mutual Insurance Company, Louisiana United Business Self Insurers Fund, Louisiana Workers' Compensation Corporation, National Loss Control Management, National Union Fire Insurance Company of Louisiana, Risk Management, Inc., Risk Management Services, LLC, Strategic Comp, Inc., and Trinity Insurance Services, Inc.

See ¶ 2.2 and 2.3.   The plaintiffs further allege that the defendants have paid these bills at discounted rates pursuant to PPO network discounts.  See ¶ 2.4 and 2.5.  Plaintiffs allege that these PPO network discounts resulted in payments below that set by the Fee Schedule in violation of La.R.S. 23:1203(B) and La.R.S. 23:1034.2.  Plaintiffs allege that since the PPO network discounts provide payments for services below that set by the Fee Schedule, that the PPO discounts are unenforceable pursuant to  La.R.S. 23:1033.  *See* ¶ 2.8 and 2.9. Plaintiffs further allege that they were not shown benefit cards when the medical care was provided and did not receive prior written notification that PPO network discounts would be applied to their bills, and, in the absence of such notice, the discounts are unenforceable under La.R.S. 40:2203.1(B) and (D).  *See* ¶ 2.6 and 2.7.

Plaintiffs' Amended Petition is somewhat unclear as to the relief sought thereby. However, the relief sought by the plaintiffs was clarified in open court during oral argument held on May 15, 2006 before the undersigned. In open court, plaintiffs' counsel clarified that by this action, plaintiffs seek a declaratory judgment declaring that, with respect to medical services to Louisiana workers' compensation patients, PPO network discounts are unenforceable under the Louisiana Workers' Compensation Act because such contractual provisions run afoul of  La.R.S. 23:1203(B),  23:1034.2 and 23:1033. Alternatively, plaintiffs seek a judgment declaring that in the absence of the notice required by La.R.S. 40:2203.1(B) and (D), PPO network discounts are unenforceable under the laws authorizing Louisiana preferred provider organizations.  Counsel for the

plaintiff stated that the Declaratory Judgement will then be used by the plaintiffs in the state courts to determine the factual issues inherent in the determination as to whether each particular health care provider plaintiff is entitled to recover the underpayment of specific bills, penalties and attorney's fees. Thus, plaintiffs ask the court to decide whether a PPO contract can be used to reduce the fee set by the Fee Schedule for services rendered under the Louisiana Workers' Compensation Act, and, if so, whether the PPO statutory notice requirement applies. [Tr. pp. 7-13, 63-64].

On February 13, 2006, newly added defendant, Fireman's Fund Insurance Company ("Fireman's") removed the *Shamieh* action to this court alleging diversity jurisdiction as the basis for removal. [rec. doc. 11-1]. While acknowledging that several of the named defendants were Louisiana citizens, Fireman's alleged that the citizenship of the Louisiana defendants should be ignored because those defendants had been "fraudulently misjoined" in this action. *Id.* at ¶ 16. Fireman's also acknowledged that not all named defendants, including Great West and Littleton, had consented to removal.[7] *Id.* at ¶ 15 and fn. 3. However, Fireman's alleged that the consent of these parties was not necessary because "fraudulently joined" defendants need not consent to removal.[8] *Id.* at ¶ 14.

---

[7]Moreover, Fireman's acknowledged that two defendants had not made a decision on the consent issue at the time of removal, and one Louisiana corporate defendant believed it could not properly consent. *Id.* at fn.3.

[8]Fireman's additionally asserted that consent of several of those defendants was not necessary because eight had not been served at the time of removal, one was not a legal entity, and one was in bankruptcy. *Id.* at fn. 3.

On February 15, 2006, Judge Trimble issued his decision in *Liberty Mutual Insurance Company v. Gunderson, et al.*, 04-2405 (W.D.La.), 2006 WL 367700 (2006). In *Liberty Mutual*, an insurer which had a PPO contract with two health care providers sought a declaratory judgment declaring that the provider agreements were valid and enforceable and that therefore the insurer was not obligated to pay the health care providers fees in excess of the negotiated PPO rate. Judge Trimble held that the notice provision of La.R.S. 40:2203.1 did not apply to the contracts at issue because of the exemption for "group purchasers" set forth in La.R.S. 40:2201.1(A). Judge Trimble additionally held that the discount provision in the provider agreements executed by the health care providers did not violate the Louisiana Workers' Compensation laws and hence, were valid and enforceable.[9]

That same day, February 15, 2006, plaintiffs filed the instant Motion to Remand, arguing that removal of this action was improper because complete diversity was lacking and the requisite jurisdictional amount was not met. Plaintiffs further argued that removal was defective because all defendants did not consent to removal, and Fireman's had failed to demonstrate that the non-diverse defendants had been fraudulently joined making their consent unnecessary because Fireman's failed to allege fraud or demonstrate that plaintiffs had no possibility of recovery against the alleged twenty-five non-diverse

---

[9]This case is pending on appeal to the United States Court of Appeals for the Fifth Circuit, docket 06-30545.

defendants[10] or the alleged four non-consenting defendants.[11]  [rec. docs. 6 and 7].

By Order dated February 16, 2006, all defendants were granted an extension of time through March 30, 2006 to file responsive pleadings. [rec. doc. 103].  Plaintiffs' Motion for Expedited Consideration of the Motion to Remand was denied on February 17, 2006.  Counsel were informed that after all defendants were properly before this court, the Motion for Remand would be placed on the undersigned's Motion calendar for disposition.  [rec. doc. 115].

In response, on February 21, 2006, plaintiffs filed a Notice of Dismissal, dismissing without prejudice all defendants who had not filed an answer or Motion for Summary Judgment. [rec. doc. 128].  Accordingly, the Clerk Ordered dismissal of those defendants on February 22, 2006.[12] [rec. doc. 133].  Thereafter, the following nine defendants remained in the *Shamieh* suit in this court: Louisiana citizens – American,

---

[10]This court believes that the total number of non-diverse defendant was twenty-six.  *See* fn. 3.

[11]Plaintiffs allege that Great West and Littleton did not consent and that two other defendants, Advanced Review 2000, Inc. and Cost Containment Strategies, Inc., refused to consent, contrary to Fireman's allegation that these two entities had made no decision on the consent issue at the time of removal.  See rec. docs. 7-1 at p. 3-4 and 11-1 at fn.3.

[12]Fireman's was among those defendants which were dismissed from this lawsuit.  However, the undersigned concludes that fact does not automatically deprive this court of jurisdiction, nor render the removal ineffective.  With respect to the removal of class actions, which may be removed by a single defendant without the consent of other defendants, the Fifth Circuit has noted, "it is 'the action' not claims against particular defendants that is removable, so the subsequent dismissal of the removing defendant cannot render the entire lawsuit improperly removed." *Braud v. Transport Service Company of Illinois*, 445 F.3d 801, 808 (5th Cir. 2006).  Section 1441, like the class action removal statute, § 1453, speaks of the removal of "actions", not claims against particular defendants.  Thus, the undersigned finds the *Braud* reasoning applies equally to removal effected under § 1441.  Moreover, unlike § 1453, § 1441 requires the consent of all defendants to effect removal.  That difference in the two statutes provides further support for concluding that the *Braud* reasoning applies in this case.  In this case, several co-defendants which consented to the removal, and who adamantly oppose remand, remain in this lawsuit, so the remand issue has been fairly presented and is obviously justiciable. Finally, it is well settled the propriety of removal is evaluated at the time of removal, and accordingly, dismissal of a party after removal does not affect the propriety of the removal.  *F.S.L.I.C. v. Griffin*, 935 F.2d 691, 696 (5th Cir. 1991); *Miranti v. Lee*, 3 F.3d 925, 929 (5th Cir. 1993).

Lemic, LSAT and Richard, and foreign citizens – Cambridge Integrated Services Group, Inc. ("Cambridge"), Great West, Rehab, Federated Electric Mutual Insurance Company ("Federated"), and GAB Robins North America, Inc. ("GAB").

During a status conference held on March 15, 2005, the undersigned granted the defendants' oral motion for limited discovery, permitting the deposition of an authorized representative of Great West. [rec. doc. 164]. That deposition was taken on March 28, 2006. [rec. doc. 215]. A copy of the transcript of that deposition has been filed herein. Ms. Deborah Cook, General Counsel of Great West, unequivocally set out Great West's reasons for refusing to consent to removal. Ms. Cook testified that Great West refused to consent to removal because in her opinion there was no viable economic benefit to Great West in consenting to removal. Cook testified that Great West's minimal current and future exposure in this case was outweighed by the cost of litigating the issues in the federal forum. *Id*. at 34-35; 43-46; 69. Cook also testified that she believed that the legal issues presented in this litigation were more properly resolved by the state courts, and that until decided by the state courts, the issues presented herein will not be finally decided. *Id*. at 50-52; 63; 70. Moreover, Great West wanted a speedy and inexpensive resolution of the issues presented in this litigation, which she did not feel would be accomplished by litigation in the federal courts. *Id*. at 34-35; 51-52; 58; 63. Ms. Cook vehemently denied any suggestion that there was any collusion, deal making or agreements between Great West and plaintiffs. She forcefully and unambiguously testified that Great West had not

settled with plaintiffs, that there was no agreement to settle with the plaintiffs, that Great West had not paid any of the disputed amounts plaintiffs claimed were due, that she had never spoken with plaintiffs' counsel prior to the date of the deposition, and that Great West would oppose a summary judgment motion filed by plaintiffs in state court. *Id*. at 35-37; 56-57; 71.

The undersigned heard oral argument on the Motion to Remand on May 19, 2006. The parties were granted an opportunity to extensively brief the issues involved in this Motion. [rec. docs. 6,7, 148, 185, 188, 191, 192, 199, 200, 201, 203, 207, 210, and 213].

On May 31, 2006, the Louisiana Third Circuit Court of Appeal issued its *en banc* decision in *Beutler-England Chiropractic Clinic v. Mermentau Rice, Inc.*, -- So.2d --, 2006 WL 1472826, No. 05-942 (La. App. 3rd Cir. 5-31-06). The *en banc* court reversed the prior panel opinion in *Beutler-England Clinic v. Market Basket No. 27* and unanimously held that the OWC, and not the state district courts, had original and exclusive subject matter jurisdiction to adjudicate contractual disputes regarding the validity of discounts taken for medical services rendered by workers' compensation medical providers pursuant to PPO contracts. Accordingly, the parties here were granted an opportunity to file memoranda addressing the impact, if any, of the *en banc* decision in *Mermentau Rice* on the pending Motion to Remand. [rec. doc. 216]. Several parties filed memoranda in response. [rec. docs. 217, 218, 219 and 220].

## LAW AND ANALYSIS

*Removal and Diversity Jurisdiction*

"Federal courts are courts of limited jurisdiction.  We must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.,* 243 F.3d 912 (5th Cir. 2001).  Here, the removing defendants have not met their burden.  Accordingly, this court lacks diversity jurisdiction and remand is required.

The removal statute provides in pertinent part:

> Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties.  Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

28 U.S.C. § 1441(b).

In cases which are removed based on diversity, it is axiomatic that no defendant may be a citizen of the forum state.  28 U.S.C. § 1441(b); *Caterpillar Inc. v. Lewis*, 117 S.Ct. 467 469, 473 (1996).  Thus, when there is a single defendant who is a citizen of the forum state present, removal on the basis of diversity jurisdiction is barred. *Id.*  Similarly, in a case with multiple plaintiffs and multiple defendants, complete diversity is required. *Id.*; *Exxon v. Allapattah*, 125 S.Ct. 2611, 2617 (2005).  Moreover, in diversity cases,  a single non-diverse party "destroys original jurisdiction with respect to all claims" in the

11

action. *Id.* at 2618.  An exception to the rule of complete diversity applies when a non-diverse or, arguably, a non-consenting diverse defendant, is improperly joined in order to defeat the court's diversity jurisdiction.

It is undisputed that the plaintiffs are citizens of Louisiana.  It further undisputed that four of the remaining defendants are Louisiana citizens for purposes of removal and diversity jurisdiction.[13]   The removing defendants contend that the presence of these non-diverse defendants should be disregarded because the Louisiana defendants were "fraudulently misjoined."

It is equally undisputed that one of the remaining diverse defendants, Great West, did not consent to removal of the *Shamieh* action to federal court at the time the action was removed; Great West continues to withhold its consent to removal of this action. The removing defendants contend that the refusal of Great West to consent to removal should be ignored because, they contend, Great West was fraudulently joined to defeat this court's jurisdiction.  Specifically, the removing defendants contend that Great West's refusal to consent to removal may be ignored because of collusion, deal-making or secret agreements between Great West and plaintiffs.  The removing defendants suggest that the plaintiffs are not seriously, and in good faith, pursuing Great West in this litigation.  This contention is based on the belief of these defendants that Great West's position is not credible because of Judge Trimble's prior decision in *Liberty Mutual*, it's "nonchalance"

---

[13]American, Richard, Lemic, and LSAT. In fact, it appears that at the time of removal, a total of twenty-six defendants were Louisiana citizens.  *See* fn. 3, *supra*.

in this litigation, and the amount of Great West's stake in this controversy. These defendants also suggest that Great West will not oppose a motion for summary judgment filed by plaintiffs in state court as a further indication of the alleged collusion.[14]

*Consent to Removal/Improper Joinder*

As the party invoking the court's jurisdiction, the removing defendants bear the burden of establishing federal subject matter jurisdiction. *Dodson v. Spiliada Maritime Corp.*, 951 F.2d 40, 42 (5th Cir. 1992). Here, the notice of removal, as well as the entire record of this proceeding, clearly establishes that not all properly served diverse defendants consented to removal. The removing defendants acknowledge that the diverse defendant, Great West, has never consented to the removal of this action from state court.

In the Fifth Circuit, the "rule of unanimity" requires that all properly joined and served diverse defendants must join in the removal or otherwise consent to removal within the thirty day period set forth in 28 U.S.C. § 1446(b). *Jones v. Scogin*, 929 F.Supp. 987, 988 (W.D. La. 1996) citing *Getty Oil, Div. Of Texaco v. Ins. Co. of North America*, 841 F.2d 1254, 1263 (5th Cir. 1988). In order to "join" in the removal petition, "there [must] be 'some timely filed written indication from each served defendant ... that it has actually consented to such action.'" *Gillis v. Louisiana,* 294 F.3d 755, 759 (5th Cir. 2002) quoting *Getty Oil*, 841 F.2d at 1262 fn. 11. Failure to do so, renders the removal

_____

[14]The state court record reveals that a Motion for Summary Judgement was filed against Great West while this action was pending in state court. At the time of removal, Great West had not opposed that motion. Upon removal, the Motion was not re-filed in this court as required by LR 7 and accordingly, is considered abandoned. *See* rec. doc. 102, ¶ 2.

defective.  *Getty Oil*, 841 F.2d at 1262.  Thus, in the absence of an exception to this general "rule of unanimity", the failure of Great West to join in, or otherwise consent to, removal requires the case to be remanded to state court.  *Jones*, 929 F.Supp. at 988; *Bourne v. Eli Lilly & Co.*, 2005 WL 2998914, *3-4 (W.D.La. 2005), *aff'd*, 2006 WL 273614 (W.D.La. 2006).

Here, the removing defendants do not contest that Great West was properly served prior to the time that the Notice of Removal was filed.  Indeed, Great West had not only been served at the time of removal, but had in fact filed its answer while the case was still pending in state court. [rec. doc. 183].  Rather, the removing defendants contend that Great West's consent is "irrelevant" and its refusal to consent should be disregarded because Great West has been fraudulently joined. In support of this proposition, the removing defendants rely on language in *Jernigan v. Ashland Oil, Inc.,* 989 F. 2d 812, 815 (5th Cir. 1993) and *Bourne, supra.*

A simple review of the facts in *Jernigan* and *Bourne* show that neither case dealt with diverse, non-consenting defendants. Rather, both of these cases dealt with in-state defendants which were allegedly joined specifically to defeat diversity jurisdiction. In other words, neither of these two cases stand for the proposition that the refusal to consent to removal by a diverse defendant can be ignored because of improper joinder. The removing defendants have failed to cite any Fifth Circuit jurisprudence so holding; the undersigned knows of no case in this circuit so holding.

Assuming, *arguendo*, that the failure to consent to removal by a diverse defendant can be ignored if that defendant is improperly joined, the argument nevertheless fails here.

In *Smallwood v. Illinois Central Railroad Company,* 385 F.3d 568 (5th Cir. 2004) (*en banc*), the Fifth Circuit recognized two ways to establish improper joinder: "actual fraud in the pleading of jurisdictional facts," or an "inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Id.* at 573, citing *Travis v. Irby*, 326 F.3d 644 (5th Cir. 2003) citing *Griggs v. State Farm Lloyds*, 181 F.3d 694, 698 (5th Cir. 1999).[15] The removing party's burden of proving improper joinder is "heavy." *Smallwood,* 385 F.3d at 574. Here, the removing defendants do not contend that there was any fraud in the pleading of jurisdictional facts. Rather, the removing defendants focus on the second basis for improper joinder, that is, that the plaintiff is unable to establish a cause of action in state court against the non-consenting diverse party. In resolving this issue, this court must determine,

> ... whether the defendant has demonstrated that there is *no possibility of recovery* by the plaintiff against an in-state [non-consenting diverse] defendant, which stated differently means that there is *no reasonable basis* for the district court to predict that the plaintiff might be able to recover against the in-state [non-consenting diverse] defendant.

*Smallwood,* 385 F.3d at 573 citing *Travis,* 326 F.3d at 648 (emphasis added; internal

---

[15]In *Smallwood*, while sitting *en banc*, the Fifth Circuit adopted the term "improper joinder" rather than the term "fraudulent joinder" used in prior cases, noting that "there is no substantive difference between the two terms." *Id.* at 571 fn. 1. The undersigned also prefers the term "improper" joinder.

citation and quotations omitted). The removing defendants argue that under *Smallwood*, Great West's refusal to consent should be ignored because the plaintiff has no reasonable basis for recovery against Great West. These defendants rely on Judge Trimble's decision in *Liberty Mutual* as supporting their position. Of course, if the removing defendants are correct, as a matter of law, the plaintiffs' claims against *both* the in-state and diverse defendants fail.

However, when there is no reasonable basis for the plaintiff to recover against *both* an in-state defendant and a diverse defendant "there is no improper joinder; there is only a lawsuit lacking merit. In such cases, it makes little sense to single out the in-state defendants as 'sham' defendants and call their joinder improper." *Smallwood* 385 F.3d at 574. Thus, a finding that is equally dispositive as to all defendants precludes a finding of improper joinder, and, accordingly, requires remand of the entire suit to state court. *Id.* at 571. Thus, the argument that because plaintiffs here are unable to recover against both the in-state and the diverse non-consenting defendants, that therefore remand is improper, is unavailing.

Furthermore, while the district court may "pierce the pleadings" and entertain summary judgment-type evidence, it must also consider "all unchallenged factual allegations" in the light most favorable to the plaintiff. *Travis, supra.* Any contested issues of fact and ambiguities of state law must be resolved in favor of remand. *Id.*

Here, it is undisputed that one of the plaintiffs, Beutler-England Clinic, has

received a favorable judgment against one of the removing defendants, Cambridge, for reimbursement of the underpaid medical bills of Ramona Primeaux. That judgment was based on the same cause of action as is the current suit. *Ramona Primeaux v. K-Mart Corporation/Cambridge Integrated Services*, OWC No. 03-01254 (6-16-04). It is further undisputed that the *Primeaux* Judgement was paid by Cambridge. [Tr. p. 42, 23]. There is no reason to believe that a different result would be obtained against a non-diverse defendant on the same cause of action.

Viewing these unchallenged facts in the light most favorable to the plaintiff, the undersigned cannot find that there is no possibility of recovery under state law. To the contrary, the *Primeaux* decision constitutes an arguably reasonable basis for predicting an outcome *favorable* to the plaintiffs under state law. Moreover, although Judge Trimble's decision in *Liberty Mutual* may contradict the *Primeaux* decision, any ambiguity present here because of the inconsistency in the results obtained in those two decisions as to whether recovery may be had under state law must be resolved in favor of the plaintiffs in determining this motion to remand. Simply stated, since one state court has already found in plaintiff's favor, the undersigned cannot say that there is "no possibility" that another state court may do so. Accordingly, a finding of improper joinder on this basis is precluded. *Smallwood*, *supra*. The defendants have failed to carry their burden under either of the two methods for establishing improper joinder in this Circuit.

Alternatively, the removing defendants argue that Great West's refusal to consent to removal may be ignored because of alleged collusion, deal-making or secret agreements between Great West and plaintiffs, suggesting that the plaintiffs are not seriously, and in good faith, pursuing Great West in this litigation. The Fifth Circuit has not recognized such collusion as providing a legal basis for improper joinder of a non-consenting diverse defendant. Rather, in support of this argument, the removing defendants urge this court to rely on a decision from the Eastern District of Pennsylvania[16], *In re Diet Drugs*, 220 F.Supp.2d 414 (E.D.Pa. 2002), a decision from the Southern District of Mississippi, *Joe v. Minnesota Life Insurance Company*, 272 F.Supp.2d 603(S.D.Miss. 2003) and language from the United States Supreme Court decision in *Wilson v. Republic Iron & Steel Co.*, 42 S.Ct. 35 (1921). *In re Diet Drugs* relied on Third Circuit precedent, not binding on this court, which specifically holds that joinder is fraudulent "where there is ... no real intention in good faith to prosecute the action against the defendant or seek a joint judgment." *Id.* citing *Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 111 (3rd Cir. 1990). The *Joe* court merely relied on *In re Diet Drugs* and *Wilson*.

However, even if *Wilson* is read as setting forth a method of establishing improper joinder in addition to those set out in *Smallwood*, the removing defendants have failed to

---

[16]Although the Eastern District of Pennsylvania was the transferee court of this Multi-District Litigation, the court applied Third Circuit precedent with respect to the improper joinder issue. *In re Diet Drugs*, 220 F.Supp.2d at 419.

demonstrate that the plaintiffs are not seriously and in good faith pursuing Great West in this litigation, or that Great West and plaintiffs are involved in any collusive relationship. Initially, the undersigned notes that the chronology of events in this litigation belies the removing defendants' argument in this regard. Almost two months prior to Judge Trimble's decision in *Liberty Mutual*, Great West was added as an additional defendant along with 123 other defendants, many of whom, unlike Great West, were non-diverse. When the petition for removal was filed on February 13, 2006, (two days before Judge Trimble issued his decision in *Liberty Mutual*) Fireman's notified this court in its removal petition that Great West had refused to consent to removal. Thus, in order to believe that plaintiffs singled out this particular diverse defendant to be their "pawn" to prevent removal of this action based on Great West's refusal to consent to removal, the undersigned would have to believe that the plaintiffs and Great West correctly anticipated Judge Trimble's ruling in *Liberty Mutual* in advance of that decision being rendered. There is no evidence that happened.

Furthermore, given the deposition testimony of Deborah Cook, the undersigned cannot find that Great West's stated reasons for refusing to consent to removal are not credible or are in any way suspect. Ms. Cook succinctly stated Great West's position on removal, setting forth numerous reasons why it would not consent to removal, none of which are patently unreasonable. Great West wants a final resolution of the issues involved in this litigation, and similar litigation pending in the state courts, as

expeditiously and inexpensively as possible. Given the numerous lawsuits pending in both the federal and state courts, including the OWC, the pending appeal in the Fifth Circuit of Judge Trimble's ruling in *Liberty Mutual*, and the number of pleadings filed by the parties with respect to the instant Motion, there may well be no viable economic benefit to Great West in removal.

Additionally, as pointed out by Ms. Cook, the state courts are not bound to follow Judge Trimble's decision in *Liberty Mutual*; a state court might well decide to reject Judge Trimble's reasoning and instead adopt the reasoning of the OWC in the *Beutler-England Clinic* case. Indeed, there may be no final resolution of the issues presented herein until the Louisiana Supreme Court renders a decision on the merits, and, in the absence of a certification by the Fifth Circuit to the Louisiana Supreme Court, that will not occur in litigation in the federal courts. Finally, given the Third Circuit's recent decision in *Mermentau Rice*, Great West may well be correct that the issues presented in this litigation are more properly presented to, and resolved by, the state courts. Thus, litigation in this court may not present the most expeditious or cost effective manner for a final resolution of the issues presented herein.

Ms. Cook also thoroughly dispelled any suggestion that there was any collusion, deal-making or agreements between Great West and plaintiffs. She unambiguously testified that Great West has not settled with plaintiffs, that there is no agreement to settle with the plaintiffs, that Great West has not paid any of the disputed amounts plaintiffs

claim are due and that Great West will oppose summary judgment motions filed by plaintiffs. The removing defendants have presented no proof to the contrary and rely solely on supposition and innuendo to support their arguments. Mere supposition and innuendo are insufficient to show collusion.

For these reasons, the undersigned cannot find that plaintiffs are not seriously, and in good faith, pursuing Great West in this litigation or that Great West and plaintiffs are involved in any collusive relationship designed to deprive this court of jurisdiction. Great West's joinder is therefore not improper and accordingly, Great West's refusal to consent to removal cannot be disregarded. Because Great West has not consented to the removal of this action, the removal was defective. As a result, this court lacks diversity jurisdiction and remand of this action to state court is required. *See Jones* and *Bourne, supra.*

*Fraudulent Misjoinder*

The removing defendants also urge this court to disregard the citizenship of the non-diverse parties and Great West's failure to join in the removal to this court on the grounds that the claims asserted by plaintiffs against the defendants constitute "fraudulent misjoinder." The removing defendants argue that this court should sever the claims against these defendants, remand the claims against the non-consenting and non-diverse defendants to state court, and retain jurisdiction over plaintiff's claims against the diverse defendants in which the requisite jurisdictional amount is satisfied.

The concept of "fraudulent misjoinder" of claims was first articulated by the Eleventh Circuit in *Tapscott v. MS Dealer Serv. Corp.,* 77 F.3d 1353 (11th Cir.1996), *abrogated on other grounds, Cohen v. Office Depot,* 204 F.3d 1069 (11th Cir.2000). In *Tapscott*, the Eleventh Circuit held that the misjoinder of "wholly distinct" claims, measured under the standards of Rule 20, FRCP, against two groups of unrelated defendants, one group diverse, and the other group non-diverse and having "no real connection with the controversy," could not defeat the diverse defendants' right of removal. *Tapscott*, 77 F.3d at 1360. The court noted, however, that mere misjoinder does not rise to the level of fraudulent misjoinder; to rise to that level, the misjoinder must be totally unsupported or "egregious" misjoinder. *Id.*

The removing defendants argue that the Fifth Circuit has recognized approvingly the holding in *Tapscott*. *See, In re Benjamin Moore & Co.,* 309 F.3d 296, 298 (5th Cir. 2002) and *In re Benjamin Moore & Co.,* 318 F.3d 626, 631 (5th Cir. 2002). A review of those cases, and subsequent Fifth Circuit jurisprudence, reveals that no Fifth Circuit case has specifically adopted or actually applied *Tapscott* in the manner in which the defendants argue that case should be applied here.[17] In fact, the court in *Smallwood*, an *en*

---

[17]In *In re Benjamin Moore & Co.,* 309 F.3d 296, 298 (5th Cir. 2002) the Fifth Circuit denied a petition for *writ of mandamus*, and in doing so cited *Tapscott* stating "it might be concluded that misjoinder of plaintiffs should not be allowed to defeat diversity jurisdiction." In *In re Benjamin Moore & Co.,* 318 F.3d 626, 630-631 (5th Cir. 2002) the Fifth Circuit addressed another petition for *writ of mandamus*, holding that it did not have jurisdiction to review the district court's decision regarding misjoinder, but doing so "without detracting from the force of the *Tapscott* principle that fraudulent misjoinder of plaintiffs is no more permissible than fraudulent misjoinder of defendants to circumvent diversity jurisdiction." Recently, in *Crockett v. R.J. Reynolds Tobacco Co.,* 436 F.3d 529 (5th Cir. 2006), in a case previously remanded by the district court to state court for lack of diversity jurisdiction, the Fifth Circuit found that the "voluntary/involuntary rule", whereby a non-removable action may become removable only by a voluntary act of the plaintiff, does not bar a second removal after the state courts sever improperly joined

22

*banc* Fifth Circuit decision that post-dates the *Benjamin Moore* decisions, the Fifth Circuit identified only two methods of establishing improper joinder, that is, actual fraud in the pleading of jurisdictional facts and the inability of the plaintiffs to set forth a cause of action against the non-diverse defendants in state court.  There is no mention of *Tapscott*-type fraudulent misjoinder as an  acceptable method of establishing improper joinder in the Fifth Circuit.  Judge Fitzwater of the Eastern District (sitting by designation) recognized this omission in *Schwartz v. Chubb & Sons, Inc.*, 2006 WL 980673, *4 (E.D.La. 2006).

However, even if Rule 20 misjoinder is a way of establishing fraudulent misjoinder so as to allow the removing defendants the relief they seek here, the joinder in this case is not sufficiently egregious to constitute fraudulent misjoinder under *Tapscott*. The courts which  have applied *Tapscott's* "fraudulent misjoinder" principle  have consistently observed that mere misjoinder does not constitute fraudulent misjoinder.  *See Juneau v. Ducote*, 2005 WL 2648861, 4 (W.D.La. 2005);  *Bright v. No Cuts, Inc.*, 2003 WL 22434232, *4 (E.D. La. 2003) and cases cited therein.  Instead, the misjoinder must be "egregious."  *Id.*[18]  Indeed, Judge Trimble recognized, when he remanded *Gunderson*, that even if the defendants had been improperly joined, the misjoinder was not egregious

---

claims asserted against non-diverse defendants thus creating diversity jurisdiction.

[18]See also *In re Silica Products Liability Litigation*, 398 F.Supp.2d 563, 651 and 656 (S.D.Tex. 2005); *Schuchmann v. Miraglia*, 2004 WL2626532 (N.D.Tex. 2004); *Walton v. Tower Loan*, 338 F.Supp.2d 691, 695 (N.D.Miss. 2004); *Delaney v. Bank of America Corp.*, 2004 WL 1553518, *3 (N.D.Miss. 2004); and *Mohamed v. Mitchell,* 2006 WL 212218, *2 (N.D.Miss. 2006).

and hence, not fraudulent.  *Gunderson v. F.A.Richard & Associates, et al.*, *supra*.  Courts

have not applied *Tapscott* unless the connection between the claims against the individual

parties is so tenuous that disregarding the citizenship of the joined parties is just, or when

there is no "palpable connection" between the claims and parties joined.  *Bright,*  2003

WL 22434232 at *5 , and cases cited therein.

The removing defendants argue that the claims against the diverse and non-

consenting defendant have been improperly cumulated in violation of the Louisiana Code

of Civil Procedure and that therefore they are misjoined.  *See*  La. Code Civ. Pro. Art.

463.  However, both the Eleventh Circuit in *Tapscott* and the district courts in this district

have analyzed the question of fraudulent misjoinder under Rule 20 FRCP, and not under

state joinder (cumulation) rules.[19]  *See Tapscott, Juneau* and *Gunderson, supra*.; *see also*

*Triggs v. John Crump Toyota, Inc.* 154 F.3d 1284 (11th Cir. 1998) (analyzing a claim of

fraudulent misjoinder under Rule 20, FRCP).  This court's research reveals that among

federal district courts sitting in other jurisdictions, the question of whether a claim of

improper joinder under *Tapscott* should be analyzed under state joinder rules or under

---

[19]The test for permissive joinder under Rule 20, FRCP, can be paraphrased as "(1) whether there is a logical relationship between the claims, and (2) whether there is any overlapping proof or legal question."  *DIRECTV, Inc. v. Vanryckeghem*,  2004 WL 1794521, *2 (E.D.La. 2004) (citations omitted).

Rule 20 does not require that all questions of law or fact in the action be common among the parties; rather, the rule permits joinder whenever there is at least one common question of law or fact.  *Guedry v. Marino*, 164 F.R.D. 181, 184 (E.D.La.1995).

The removing defendants have not argued that the joinder of the claims asserted herein was improper under Rule 20.  Nevertheless, the complained of joinder, at least on its face, meets the requirements of Rule 20.  The claims asserted by plaintiffs herein center on a series of PPO agreements, all of which contain language which purportedly permits the defendant payors to discount the plaintiffs bills.  Whether such language is enforceable under Louisiana law is a matter of statutory interpretation, a question of law common to all parties defendant.

Rule 20 FRCP is unsettled. The undersigned finds it unnecessary to decide the issue here because this case, unlike *Tapscott* and *Juneau*, does not present an example of "egregious" misjoinder.

In the instant case, joinder of the claims against the non-consenting and non-diverse defendants is not tenuous, and there is more than a palpable connection between the claims and parties joined. As limited by counsel for the plaintiffs during oral argument, the claim for declaratory judgement asserted by the plaintiffs in this suit is identical as to each of the named defendants. The question of whether a PPO contract which provides for payment below the Fee Schedule is enforceable under Louisiana law, and if so, whether prior notice is required, are questions of pure statutory interpretation of Louisiana law, common to all claims asserted against the defendants herein.[20]

Even though each of the contracts executed between the plaintiffs and the defendants may have been separate contracts, signed at different times, the legal issue on which the plaintiffs seek a declaration is common to all. Moreover, this is the case whether the defendant is an insurer, third party administrator or otherwise.[21] Each named defendant allegedly relies on a PPO contract to discount workers' compensation bills

---

[20]Consistent with plaintiff's limited demand for relief, determination of all factual issues inherent in the determination as to whether a particular health care plaintiff is entitled to recover the underpayment of a specific bill and penalties and attorney's fees, and all factual issues inherent in the payor defendant's defenses, including the defense that notice of the discount was properly given, would be resolved in state court after the instant declaratory judgment action has been concluded.

[21]To the extent that some of the named defendants are neither insurers nor third-party administrators, as Judge Trimble noted in *Gunderson*, the defendants are so intertwined that it cannot be said that joinder is improper here.

submitted by plaintiffs below the Fee Schedule.  Whether that reliance is permissible

under Louisiana law is a legal question, the answer to which does not depend on the

status of a particular defendant.  Thus, it cannot be said that there is "no real connection"

between the defendants, nor can it be said that the claims asserted herein against each

defendant are  "wholly distinct" from the claims asserted by plaintiffs against the other

defendants.  *See Tapscott*, and *Bright, supra*.

     In light of the above, it is clear that the joinder of claims and parties in this case is

not "egregious."  Accordingly, for jurisdictional purposes, the court finds that the

removing defendants have not established that the claims against Great West, the diverse

non-consenting defendant, nor the claims against the non-diverse defendants were

"fraudulently misjoined" with the claims against the other defendants.[22]  Given the

removing defendants' failure to establish "fraudulent misjoinder" for jurisdictional

purposes, the refusal of the diverse defendant, Great West, to consent to removal renders

removal defective and requires remand. *See Getty, Jones,* and *Bourne*, *supra*.

     In so finding, the undersigned notes that this ruling will not preclude the

---

[22]Indeed, with respect to diverse defendant, Great West, the "fraudulent misjoinder" theory, if it exists in this Circuit, may not be applicable. The Fifth Circuit has emphasized that the improper joinder doctrine applies in cases where non-diverse defendants are joined specifically to defeat diversity or prevent removal. *See Smallwood*, 385 F.3d at 573-574. That is not the case here with Great West, a diverse but non-consenting defendant.  The undersigned has found that the removing defendants have failed to prove a collusive agreement between the plaintiffs and Great West.  Even if the "fraudulent misjoinder" theory set out in *Tapscott* is accepted, the only way that it could apply to a non-consenting diverse defendant is if such collusion was shown by the removing defendants.  That is clearly not the case here.

     Moreover, given that Great West is non-diverse, and in the absence of Fifth Circuit guidance to the contrary, this court would be willing to find "egregious" misjoinder only in cases where it seems clear that non-diverse parties were joined specifically to defeat diversity or removal.  That is not the case here.  *See Walton v. Tower Loan of Mississippi*, 338 F.Supp.2d 691, 696-697 (N.D.Miss. 2004).

defendants from seeking severance in state court after the case has been remanded.[23]  If a severance is granted by the state court, and if removal is still timely, the diverse defendants may at that time be able to properly remove their respective cases on the ground that while the case was not initially removable, the case became removable.  *See Crockett v. R.J. Reynolds Tobacco Co.*, 436 F.3d 529 (5th Cir. 2006).  Indeed, remand to state court for determination of misjoinder issues comports with the recommendation of professors Wright and Miller who opine that the removing party should challenge the misjoinder in state court *before* seeking removal.  14B, Wright, Miller & Cooper, Federal Practice & Procedure 3d, § 3723 at 658; *see also Osborn v. Metropolitan Life Insurance Co.*, 341 F.Supp.2d 1123, 1127 (E.D.Cal. 2004) (finding the "better rule" was to require the claimed misjoinder be resolved in state court, and then, if that court severed the case and diversity then existed, seek removal of the case to federal court.").

*Effect of the Mermentau Rice Decision*

Remand of this case to the Louisiana state court is further supported by the Louisiana Third Circuit Court of Appeal's May 31, 2006 *en banc* decision in *Beutler-England Chiropractic Clinic v. Mermentau Rice, Inc.* In *Mermentau Rice*, the state appellate court  held that the OWC has original and exclusive subject matter jurisdiction to adjudicate contractual disputes regarding the validity of fee reductions taken for medical services rendered to workers' compensation recipients pursuant to PPO contracts.

---

[23]This court expresses no view as to whether under Louisiana law the claims and parties were properly cumulated herein.  That is a question to be resolved by the state court.

Under 28 U.S.C. § 1445(c), "[a] civil action in any State court arising under the workmen's compensation laws of such State *may not* be removed to any district court of the United States." (emphasis added). Although the removing defendants argue that this action does not "arise under" the Louisiana Workers' Compensation laws, the *Mermentau Rice* decision, if correct, forecloses that argument. In *Mermentau Rice*, the court expressly found "the ultimate issue" in that "contractual litigation", to be "the validity of the PPO contract in light of the mandates of the Louisiana Workers' Compensation Act", which was under the original exclusive jurisdiction of the workers' compensation judges. That is also the "ultimate issue" faced by this court. If the *Mermentau Rice* decision is correct*,* the instant action clearly falls within the jurisdiction of the OWC, and as such, is not removable to federal court. While this court is, of course, not bound by the decision in *Mermentau Rice*, that decision is the latest pronouncement on the issue by a Louisiana appellate court. Unless and until other Louisiana appellate courts, or the Louisiana Supreme Court, decides the issue, this decision appears to be the law in Louisiana. Therefore, under present law, and absent a contrary decision by the Louisiana Supreme Court, this case is not removable and should be remanded to state court. 28 U.S.C. § 1445(c).

*Plaintiffs' Request for Costs, Expenses and Attorney Fees*

Plaintiffs also move under 28 U.S.C. § 1447(c) for an award of costs, expenses and attorney's fees against the original removing defendant, Fireman's Fund Insurance

Company ("Fireman's"), for improper removal of this case. Fireman's has been dismissed from this action pursuant to plaintiffs' Notice of Dismissal, dismissing all defendants who had not filed an answer or Motion for Summary Judgment. [rec. docs. 128 and 133]. This court has discretion to award costs and expenses, including attorney's fees, incurred as a result of improper removal. *Martin v. Franklin Capitol Corp*., -- U.S. --, 126 S.Ct. 704, 709 (2005); *Allstate Insurance Company v. Ford Motor Company*, 955 F.Supp. 667, 670 (W.D.La. 1996). "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Martin*, 126 S.Ct. at 711 citing *Hornbuckle v. State Farm Lloyds,* 385 F.3d 538, 541 (5th Cir. 2004) and *Valdes v. Walmart Stores, Inc.,* 199 F.3d 290, 293 (5th Cir. 2000). Under the unusual and complex legal and factual circumstances presented in this case, the undersigned cannot find that the removal in this case was objectively unreasonable. Accordingly, plaintiffs' request for costs, expenses and attorney fees should be denied.

## CONCLUSION

Based on the foregoing, the removing defendants have not carried their burden of establishing that federal diversity jurisdiction exists in this case and that removal was proper. This court therefore lacks subject matter jurisdiction. Accordingly, it is recommended that the Motion to Remand be **GRANTED** and that this lawsuit be

remanded to state court. It is further recommended that plaintiffs' request for costs, expenses and attorney's fees be **DENIED.**

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this report and recommendation within ten (10) days following the date of its service, or within the time frame authorized by F.R.C.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. Douglass v. United Services Automobile Association, 79 F.3d. 1415 (5th Cir. 1996).**

Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

Lafayette, Louisiana, July 17, 2006.

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE